1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  SONYA MAYO, | )  Case No.: 1:19-cv-1285 JLT |
| 12              Plaintiff, | )  ORDER GRANTING PLAINTIFF'S APPEAL |
| | )  (DOC. 20) AND REMANDING THE ACTION |
| 13       v. | )  PURSUANT TO SENTENCE FOUR OF 42 |
| | )  U.S.C. § 405(g) |
| 14  ANDREW SAUL, | ) |
|    Commissioner of Social Security, | )  ORDER DIRECTING ENTRY OF JUDGMENT |
| 15 | )  IN FAVOR OF SONYA MAYO, AND AGAINST |
|              Defendant. | )  DEFENDANT ANDREW SAUL, THE |
| 16 | )  COMMISSIONER OF SOCIAL SECURITY |
| 17 _____ | ) |

18          Danielle Marie Solano asserts she is entitled to a period of disability, disability benefits, and

19  supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

20  administrative law judge erred in evaluating her work history and the medical record.  For the reasons

21  set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42

22  U.S.C. § 405(g).

23                              <u>**BACKGROUND**</u>

24          In December 2014, Plaintiff filed her applications for benefits.  (Doc. 10-4 at 7)  She alleged

25  disability beginning in December 2012 due to blindness in her right eye, loss of vision in her left eye,

26  carpal tunnel in both hands, sickle cell anemia, light sensitivity, a detached retina, arthritis, and chronic

27  joint paint.  (*Id.* at 7-8)  The Social Security Administration denied the applications at the initial level

28  on August 17, 2015, and upon reconsideration on November 9, 2015.  (*See* Doc. 10-3 at 24)  Plaintiff

requested an administrative hearing and testified before an ALJ on October 4, 2017. (*Id.* at 48) The ALJ found Plaintiff was not disabled and issued an order denying benefits on October 6, 2014. (Doc. 10-3 at 24-37) Plaintiff requested review by the Appeals Council, which denied the request on January 11, 2019. (*Id.* at 10) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that a claimant is not disabled must be upheld if the proper legal standards were applied and substantial evidence supports the findings. *Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The entire record must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

2

1   the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

2   gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

3                                                   **ADMINISTRATIVE DETERMINATION**

4           To achieve uniform decisions, the Commissioner established a sequential five-step process for

5   evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

6   requires the ALJ to determine whether Plaintiff (1) engaged substantial gainful activity, (2) had

7   medically determinable severe impairments (3) that met or equaled one of the listed impairments set

8   forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

9   capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

10  numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical

11  evidence. 20 C.F.R. §§ 404.1527, 416.927.

12          Pursuant to the five-step process, the ALJ determined at step one that Plaintiff had not engaged

13  in substantial gainful activity since the alleged onset date of December 31, 2012.  (Doc. 10-3 at 26)

14  Second, the ALJ found Plaintiff's severe impairments included: "right eye blindness and hemoglobin C

15  disease."  (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically

16  equal a Listing.  (*Id.* at 31)  Next, the ALJ found:

17          [T]he claimant has the residual functional capacity to perform light work as defined
            in 20 CFR404.1567(b) and 416.967(b) except occasional climbing of ladders, ropes,
18          or scaffolds.  She can frequently stoop, kneel, crouch, crawl and perform frequent
            gross and fine manipulation with her bilateral upper extremities (BUE).  She can
19          perform no work requiring binocular vision and in a moderate noise environment
            (office environment).
20

21  (*Id.* at 31-32)  At step four, the ALJ determined Plaintiff was "capable of performing past relevant

22  work as a housekeeping cleaner," as actually performed and generally performed.  (*Id.* at 35-36)

23  Therefore, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act

24  through the date of the decision  (*Id.* at 36)

25                                                  **DISCUSSION AND ANALYSIS**

26          Plaintiff argues the ALJ erred at step four "in classifying Plaintiff's work as a housekeeper or

27  cleaner as past relevant work" after finding she did not engage in substantial gainful activity at step one.

28  (Doc. 20 at 9, emphasis omitted)  In addition, Plaintiff contends the ALJ erred in reviewing the medical

                                                          3

1   record related to her mental and physical impairments.  (*Id.* at 10-15)  The Commissioner asserts

2   substantial evidence supports the ALJ's evaluation of the medical record and the determination that

3   Plaintiff had past relevant work.  (Doc. 24 at 12-24)

4   **A.      Substantial Gainful Activity and Past Relevant Work**

5           Under the Social Security Act, "disability" is defined as the "inability to engage in any

6   substantial gainful activity by reason of any medically determinable physical or mental impairment

7   which can be expected to result in death or which has lasted or can be expected to last for a continuous

8   period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Thus, at step one of the sequential

9   analysis, the ALJ must determine whether a claimant engaged in substantial gainful activity. 20 C.F.R.

10  §§ 404.1520, 416.920. If a claimant had substantial gainful activity after the onset of disability date, the

11  analysis stops, and a finding of not disabled is mandated under the Social Security Act. *See* 20 C.F.R.

12  §§ 404.1520(b), 416.920(b) ("If you are working and the work you are doing is substantial gainful

13  activity, we will find that you are not disabled regardless of your medical condition or your age,

14  education, and work experience.").

15          At step four of the sequential evaluation, the claimant has the burden of showing that she does

16  not have the residual functional capacity to engage in "past relevant work." 20 C.F.R. §§ 404.1520(e),

17  416.920(e).  A claimant's prior work qualifies as "past relevant work" if it "was done within the last

18  15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity."

19  20 C.F.R. § 416.965(a).  Thus, the Ninth Circuit observed that "[a] job qualifies as past relevant work

20  *only if* it involved substantial gainful activity."  *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001)

21  (emphasis added).

22          "Substantial gainful activity" is defined as "work activity that involves doing significant

23  physical or mental activities . . . that [a claimant does] for pay or profit."  20 C.F.R. §§ 404.1572,

24  416.972.  "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial

25  gainful activity."  *Lewis*, 236 F.3d at 515.  A presumption that a claimant engaged in substantial gainful

26  activity is made if a person's average monthly income from that activity exceeds a certain average that

27  is designated for each calendar year.  20 C.F.R. §§ 404.1574, 416.974; *Keyes v. Sullivan*, 894 F.2d

28  1053, 1056 (9th Cir. 1990).  "The presumption that arises from low earnings shifts the step-four burden

of proof from the claimant to the Commissioner." *Lewis*, 236 F.3d at 515.  Consequently, "when a plaintiff's low earnings shift the burden to the Commissioner to show other factors warrant characterizing prior work as [substantial gainful activity], the ALJ must presume that prior work is *not* SGA unless the Commissioner proves otherwise." *Andry v. Colvin*, 2013 WL 5305903 at *3 (E.D. Cal. Sept. 1, 2013) (emphasis in original).  Such factors include: "the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work." *Lewis*, 236 F.3d at 515-16 (citing 20 C.F.R. §§ 404.1573, 416.973).

Courts have determined that an ALJ made inconsistent findings at step one and step four when an ALJ finds at step one that the claimant did not engage in substantial gainful activity, yet then determined at step four that work qualified as past relevant work. *See, e.g.*, *Lewis*, 236 F.3d at 515; *Eksund v. Astrue,* 343 Fed. App'x. 228, 229 (9th Cir. Aug. 19, 2009) (finding the ALJ erred at step four in finding the claimant could return to past relevant work where the ALJ also specifically found the claimant had "not engaged in substantial gainful activity in the past"); *Evans v. Colvin*, 2015 WL 1125495 at *4-5 (C.D. Cal. Mar. 12, 2015) (finding the ALJ erred in not addressing the factors identified by the Regulations when finding the claimant had not engaged in substantial gainful activity at step one, yet had past relevant work at step four); *Aguirre v. Colvin*, 2013 WL 4718334 at *6 (C.D. Cal. Sept. 3, 2013) (finding an ALJ's finding at step one that the claimant's work was not substantial gainful activity was "facially inconsistent [with the] step four finding that the job was performed at the level of substantial gainful activity"); *Vawser v. Astrue*, 2012 WL 734132 at *8 (D. Id. Mar. 6, 2012) (the ALJ's finding at step one that the claimant did not have substantial gainful activity was "fatal to the ALJ's conclusion at step four that [Vawser] could perform past relevant work" and the step four finding was not supported by substantial evidence).

For example, in *Lewis*, the claimant worked up to 20 hours a week at McDonald's after the alleged disability date for a year prior to the administrative hearing, but hours were reduced to "a maximum of ten hours per week" by the time of the hearing. *Id.*, 236 F.3d at 507-08, 515 n.11.  At step one, the ALJ found that working "ten hours per week at McDonald's did not constitute substantial gainful activity." *Id.* at 508.  At step four, the ALJ determined "Lewis's past work of twenty hours per

5

1  week at McDonald's was substantial and gainful, and that Lewis had the residual functional capacity to

2  do that work." *Id.* at 515.  The Ninth Circuit found the evidence cited by the ALJ at step four failed to

3  address the factors identified in the Regulations and was inadequate to overcome the presumption

4  raised by the claimant's low earnings. *Id.* at 516.  In particular, the Court noted Lewis worked the

5  twenty-hour weeks for "only two months" and this short "period of work was not substantial evidence

6  that Lewis could work twenty hours per week on a regular and continuing basis." *Id.* (internal quotation

7  marks omitted)

8          Plaintiff contends the ALJ gave inconsistent findings at step one and four, because the ALJ

9  found at step one that Plaintiff did not engage in substantial gainful activity, yet found she had past

10  relevant work at step four.  (Doc. 20 at 10)  Specifically, at step one the ALJ found Plaintiff had "not

11  engaged in substantially gainful activity since December 31, 2012, the alleged onset date," because her

12  earnings in 2013 and 2014 "fall below the SGA levels and the file contains no additional evidence that

13  said work was substantial or gainful."  (Doc. 10-3 at 27)  However at step four, the ALJ opined that

14  Plaintiff was capable of performing past relevant work as a housekeeper, which required a finding that

15  work was substantial gainful activity.  (*Id.* at 35-36)  The ALJ stated:

16          [T]he claimant worked as a housekeeper cleaner for Omni Plantation Hotel in 2013,
          thereby satisfying the duration and recency requirements (Ex. 9E, 15E, 16E, and
17          hearing testimony).  In that time, the claimant worked just a couple months, but
          earned in excess of $3,000 (Ex. 8D, 10D, and 11D). Thus, I find when extrapolated
18          over an entire 120-month period, these earnings do rise to the level of substantial
          gainful activity.

19

20  (*Id.* at 36)

21          The Commissioner argues, "[t]he ALJ reasonably found that Plaintiff's work activity as a

22  housecleaner at Omni Hotel satisfied the criteria of substantial gainful activity, and of past relevant

23  work."  (Doc. 24 at 15)  The Commissioner notes that "Plaintiff reported in various reports and testified

24  that she worked a range of dates anywhere between a month to three months in 2012 or 2013, earning

25  $3,849.70."  (*Id.*, citing AR 54 [Doc. 10-3 at 55] ("Plaintiff's testimony she was at Omni Hotel three

26  months"), AR 360 [Doc. 10-8 at 52] ("Plaintiff's report that she was at Omni Hotel '3/2012 to

27  4/2012'"))  The Commissioner asserts: "According to the SSA, if Plaintiff worked three months in

28  2013 at Omni Hotel, that would amount to a monthly amount of $1,283.23, which is higher than the

6

1   substantial gainful activity threshold for a non-blind individual in 2013, $1,040." (*Id.*, citing POMS DI

2   10501.015(B); SSA website, *Substantial Gainful Activity*, "Monthly substantial gainful activity

3   amounts by disability type," available at https://www.ssa.gov/OACT/COLA/sga.html)

4           Importantly, the ALJ did not explain her findings at step four related to Plaintiff's past relevant

5   work and its qualification as substantial gainful activity.  The ALJ observed that substantial gainful

6   activity includes "duration and recency" requirements and found these satisfied, stating:

7           Duration refers to the length of time during which the person gained job experience.
        It should have been sufficient for the worker to have learned the techniques, acquired
8           information, and developed the facility needed for average performance in the job
        situation.  The length of time this would take depends on the nature and complexity of
9           the work. Recency refers to refers to the time that has elapsed since the work was
        performed.  A gradual change occurs in most jobs in our national economy so that
10          after 15 years it is no long[er] realistic to expect that skills (or proficiencies) and
        abilities acquired in these jobs continue to apply.  The 15-year guide is intended to
11          insure that remote work experience that could not reasonably be expected to be of
        current relevance is not applied.  Here, the claimant worked as a housekeeper cleaner
12          for Omni Plantation Hotel in 2013, thereby satisfying the duration and regency
        requirements (Ex. 9E, 15E, 16E, and hearing testimony).  In that time, the claimant
13          worked just a couple months, but earned in excess of $3,000 (Ex. 8D, 10D, and 11D).

14   (Doc. 10-3 at 36) Though Plaintiff's employment with Omni Hotel occurred in the last 15 years, the

15   ALJ fails to explain her finding that the brief duration of Plaintiff's employment was sufficient for her

16   to learn the techniques and acquire the information needed to perform the position.

17           Furthermore, the ALJ fails to address the factors identified by the Regulations and the Ninth

18   Circuit in *Lewis*.  (*See* Doc. 10-3 at 36)  The ALJ did not make findings regarding the nature of

19   Plaintiff's work as a housekeeper, how well she performed the work, whether her work was completed

20   under any special conditions, and the amount of time Plaintiff performed the work.[1]  *Compare with*

21   *Lewis*, 236 F.3d at 515-16; 20 C.F.R. §§ 404.1573, 416.973.  The ALJ acknowledged Plaintiff "worked

22   just a couple months" but made no finding that she would be able to sustain this level of activity.  As

23   the Ninth Circuit observed in *Lewis*, where the claimant worked more hours for "only two months," this

24   short duration "was not substantial evidence" that the claimant could perform the work "on a regular

25   and continuing basis."  *See Lewis*, 236 F.3d at 516.

26           Finally, the ALJ indicated that Plaintiff's earnings "extrapolated over an entire 120-month

27

28   _____
        [1] Notably, Plaintiff reported she was criticized for not performing well and said she was let go from the job because
   she "left too much hair" and was not "getting the stuff," which Plaintiff attributed to an inability to see.  (Doc. 10-3 at 56).

7

period… do rise to the level of substantial gainful activity." (Doc. 10-3 at 36)  Assuming the ALJ

actually meant Plaintiff's earnings extrapolated over a *12*-month period rise to the required level, the

record does not support this finding.  The ALJ did not identify how she calculated Plaintiff's average

monthly income—or the evidence related to how long Plaintiff was employed as a housekeeper in

2013— to compare it to the minimum average monthly income identified by the Social Security

Administration, which was $1,740 for 2013.  *See Substantial Gainful Activity*, "Monthly substantial

gainful activity amounts by disability type", available at https://www.ssa.gov/OACT/COLA/sga.html

(last visited Mar. 4, 2021).  Indeed, the ALJ did not explain why she believed this work qualified as

"substantial gainful activity" at step four, but found the work was not "substantial gainful activity" at

step one of the sequential evaluation.  Consequently, the Court finds substantial evidence does not

support the findings at step four, and the ALJ erred in classifying Plaintiff's work as a housekeeper

satisfied the requirements of substantial gainful activity at step four and qualified as past relevant work.

*See Lewis*, 236 F.3d at 515-16; *Eksund,* 343 Fed. App'x. at 229; *Masterson v. Colvin,* 2017 WL

2953957 at *10 (S.D. Cal. July 11, 2017) (finding the ALJ erred at step four where the ALJ did not

"provide other reasons to explain how the past work was SGA despite the low earnings").

**B.    Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating

physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general,

the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see* 20 C.F.R. § 404.1527(d)(2);

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is

given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506

(9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether or not another

physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted*

opinion of a treating or examining medical physician only by identifying a "clear and convincing"

reason.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician

may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the

record." *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by two consultative examiners, Drs. Izzi and Fabella.  (Doc. 20 at 10-15)  Because the opinions were contradicted by state agency medical consultants and another consultative examiner (*see* Doc. 10-3 at 26-30, 24), the ALJ was required to identify specific and legitimate reasons for rejecting the opinions of Dr. Izzi and Fabella. *See Lester*, 81 F.3d at 831.

### 1.      Examination and findings of Dr. Izzi

Dr. Roger Izzi performed a consultative psychiatric evaluation on July 12, 2015.  (Doc. 10-11 at 14)  Dr. Izzi noted Plaintiff's chief complaints included inability to see, sickle cell anemia, pain in her wrist, bipolar disorder, and being "angry all the time."  (*Id.*)  Plaintiff "described herself as homeless," but said she left at her mother's house.  (*Id.*)  She told Dr. Izzi that she had a poor appetite, difficulty sleeping, unprovoked crying spells, and "auditory-type hallucinations."  (*Id.*)  Dr. Izzi noted Plaintiff was currently receiving treatment and denied any prior psychiatric hospitalization.  (*Id.* at 15)

Dr. Izzi observed that Plaintiff had an "alert, and responsive" level of consciousness, and Plaintiff "was fully oriented" because she "could identify the year, month and date.  (Doc. 10-11 at 15)  He found Plaintiff's "affect seemed dysphoric," and noted Plaintiff "seemed irritable and was observed to cry."  (*Id.*)  Dr. Izzi found Plaintiff "was able to immediately recall three words without any obvious difficulty," and after a delay "was unable to recall any of the words."  (*Id.* at 16)  Plaintiff "was unable to spell the word 'world,'" but had "no difficulty counting backwards from 10."  (*Id.*)  Dr. Izzi did not observe any auditory or visual hallucinations.  (*Id.*)  Dr. Izzi diagnosed Plaintiff with Major Depressive Disorder.  (*Id.*)  Dr. Izzi opined:

> The present evaluation suggests that the claimant does appear capable of performing a simple and repetitive type tasks on a consistent basis over an eight-hour period.  Her ability to get along with peers or be supervised in [a] work-like setting would be moderately limited by her mood disorder.  The claimant's mood disorder can be

9

expected to fluctuate.  Any significant fluctuation in mood would limit the claimant's ability to perform a complex task on a consistent basis over an eight-hour period.  On a purely psychological basis, the claimant appears capable of responding to usual work session situations regarding attendance and safety issues.  On a purely psychological basis, the claimant appears capable of dealing with changes in a routine work setting.

(*Id.* at 16)  Further, Dr. Izzi believed Plaintiff was "capable of managing her own funds."  (*Id.* at 17)

### a. The ALJ's evaluation of the opinion

Addressing the medical evidence regarding the severity of Plaintiff's mental impairments, the ALJ indicated that the opinion of Dr. Izzi was given "little weight."  (Doc. 10-3 at 30)  The ALJ summarized the findings of Dr. Izzi, and stated:

> [S]ince the alleged onset of disability, the claimant has been able to attend to her personal care needs, listen to music, watch television, access the internet, prepare and cook simple meals (i.e. microwave food or make sandwiches), wash the dishes, wash the laundry, and ride in a car (Ex. 7E, 8E, and hearing testimony).  Further, the claimant is able to attend doctor's appointments, go shopping in stores, and visit with friends and family (id.).  In addition, she has no trouble understanding or following spoken or written instructions and she gets along with authority figures (id.).  She stated that when funds are available, she is able to count her change, pay her bills, handle [a] savings account, and use a checkbook and money orders (id.).  Finally, the claimant completed twelve (12) years of formal education, received her diploma, and she can read, write, and speak in English (id.).  Thus, I gave the opinions of Dr. Franco and Dr. Aquino-Caro great weight and the opinion of Dr. Izzi little weight as defined herein.

(*Id.*)  Plaintiff contends the ALJ erred in rejecting the opinions of Dr. Izzi on these grounds, which resulted in an erroneous step two determination that her mental impairments are not severe.  (*See* Doc. 20 at 10-13)  On the other hand, the Commissioner asserts "the ALJ properly found Plaintiff's mental impairments were not severe at step two" and "properly gave little weight to Dr. Izzi's opinion because it was inconsistent overall with Plaintiff's self-reported daily activities, described above (AR 29), her lack of hospitalization for her psychiatric symptoms, and her presentation on examination, including alert and responsive consciousness and full orientation."  (Doc. 24 at 15)

### b. Plaintiff's level of activity

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the  subjective complaints and limitations

identified by the doctor conflicted with the claimant's daily activities).

As an initial matter, the record cited by the ALJ does not support her report that Plaintiff performed many of the identified activities and abilities, which the Commissioner acknowledges.  (*See* Doc. 24 at 16, n. 10)  For example, in the Disability Report (Exhibit 7E) and Exertion Questionnaire (Exhibit 8E) cited by the ALJ, Plaintiff did not indicate an ability to prepare simple meals, wash dishes, or do laundry.  To the contrary, Plaintiff noted in the Exertion Questionnaire that she did not do any cleaning, though she took out the trash if it was "not heavy."  (Doc. 10-8 at 49)  Similarly, Plaintiff testified at the hearing that she did not help with any household chores, and her mother handled all laundry, cooking, and cleaning.  (Doc. 10-3 at 64-65)  Thus, these activities do not support the ALJ's rejection of the opinion of Dr. Izzi.

Furthermore, the ALJ fails to explain how Plaintiff's other activities—such as an ability to ride in a car, attend doctor appointments, go grocery shopping, listen to music, watch television, and access the internet—are inconsistent with the limitations identified by Dr. Izzi, including an inability to perform complex tasks "on a consistent basis."  (*See* Doc. 10-11 at 16)  The ALJ does not make any finding that Plaintiff engages in such activities on a consistent basis, or that the activities identified are complex in nature. The ALJ also did not explain whether—or to what extent—Plaintiff's ability to visit with friends and family is inconsistent with limited ability to get along with peers or supervisors identified by Dr. Izzi. Because the ALJ failed to explain how Plaintiff's level of activity was inconsistent with the specific limitations identified by Dr. Izzi, this factor does not support the ALJ's decision to give little weight to the opinion of Dr. Izzi.

### c.      Inconsistency with the record

The Ninth Circuit determined that inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602-03 (9th Cir. 1999).  To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  The ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings."  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

As noted, the ALJ cited Plaintiff's Disability Report, Exertion Questionnaire, and testimony to

support the conclusion that Plaintiff "has no trouble understanding or following spoken or written instructions and she gets along with authority figures." (Doc. 10-3 at 30)  However, nothing in the cited evidence addresses Plaintiff's concentration, ability to follow instructions, or interaction with authority figures.  (*See generally* Doc. 10-3 at 48-74; Doc. 10-8 at 38-45, 48-50)  To the extent the ALJ found these limitations were inconsistent with the record, the ALJ failed to carry the burden to identify evidence that conflicted with the opinion.  Thus, the purported inconsistencies do not support the ALJ's rejection of the findings of Dr. Izzi.

### d. Treatment and lack of hospitalization

The Commissioner asserts the ALJ properly considered Plaintiff's "lack of hospitalization for her psychiatric symptoms" in rejecting the limitations identified by Dr. Izzi.  (Doc. 24 at 15) The Ninth Circuit determined an opinion of a physician may be rejected when it is inconsistent with the treatment received by a claimant.  For example, an ALJ may reject the opinion of a physician who prescribes conservative treatment yet opines that a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Warre v. Comm'r of the Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

Addressing Plaintiff's mental limitations at step two, the ALJ observed: "The file contains little evidence of mental health treatment.  In fact, during the one-time examination, Dr. Izzi noted no history of hospitalizations for psychiatric treatment." (Doc. 10-3 at 29)  However, Plaintiff's treatment history was not identified as a reason for rejecting the limitations identified by Dr. Izzi.  (*See id.* at 29-30).

The Court is constrained to review only the reasons identified by the ALJ and cannot consider post-hoc reasoning provided by the Commissioner. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting a reviewing court is "constrained to review the reasons the ALJ asserts"). Because the ALJ did not identify a lack of treatment as a reason to discount the limitations identified by Dr. Izzi, the Court is unable to consider this reason identified by the Commissioner.  *See id.; see also Vera v. Colvin*, 2015 WL 7271750 at *7 n.6 (E.D. Cal. Nov. 18, 2015) ("the court declines to consider the Commissioner's additional reason in support of the ALJ's determination").

///

e.      *Conclusion*

The ALJ failed to identify specific and legitimate reasons for rejecting the limitations imposed by Dr. Izzi regarding Plaintiff's mental impairments, including a limitation with "complex task[s] on a consistent basis over an eight-hour period" and Plaintiff's moderate limitation with getting along with peers and supervisors.  Thus, the Court cannot find the ALJ's evaluation of Dr. Izzi's opinion at step two was proper.

2.      Examinations and findings of Dr. Fabella

Dr. Emmanuel Fabella performed a consultative internal medicine examination on July 7, 2015. (Doc. 10-11 at 4)  He reviewed available treatment notes from 2014 and 2015 and performed a physical examination.  (*Id.* at 5-9)  Dr. Fabella determined Plaintiff's grip strength was 20 pounds in her right hand and 20 pounds in her left hand.  (*Id.* at 6)  He found Plaintiff was "[u]nable to see" in either eye without glasses.  (*Id.* at 7)  Dr. Fabella observed that Plaintiff's was "unable to walk on her toes," her gait was "mildly to moderately antalgic," and her balance was "somewhat precarious."  (*Id.*)  He found Plaintiff had a "decreased range of motion with abduction" in her right shoulder, and her hands showed "positive Tinel's and Phalen's signs bilaterally, and mild thenal atrophy on the right side."  (*Id.* at 8)  Plaintiff also had "mild effusion" and decreased range of motion in the right knee.  (*Id.*)  Dr. Fabella noted her range of motion was "grossly within normal limits" in her elbows, wrists, hips, and ankles. (*Id.*)  Further, Dr. Fabella determined Plaintiff's motor strength was "5/5" and her senses were intact to light touch.  (*Id.* at 8-9)

Dr. Fabella opined Plaintiff's ability to see was "severely impaired" and noted she was "only able to perceive light with the right eye but the left eye can count fingers at 6 feet."  (Doc. 10-11 at 10) He believed Plaintiff was "able to lift and carry less than 10 pounds occasionally and frequently secondary to blindness, carpal tunnel disease, and unsteady gait."  (*Id.* at 9)  In addition, he determined Plaintiff was "able to walk and stand less than two hours out of an eight-hour day secondary to blindness, impaired gait, and arthropathy."  (*Id.*)  He believed Plaintiff "may benefit from the use of a cane when walking at all times."  (*Id.*)  Dr. Fabella opined Plaintiff was "unable to climb, balance, kneel, or crawl secondary to blindness, multiple arthropathies, and impaired gait;" and "unable to walk on uneven terrain, climb ladders, or work at heights secondary to blindness and multiple arthropathies."

1  (*Id.*)  Due to Plaintiff's carpal tunnel syndrome, Dr. Fabella found "moderate impairment in both gross

2  and fine fingering manipulation."  (*Id.*)

3          On July 18, 2017, Dr. Fabella performed a second internal medicine consultation. (Doc. 10-11

4  at 38)  He noted Plaintiff's surgical history included carpal tunnel release and retinal detachment

5  surgery.  (*Id.*)  Dr. Fabella observed that Plaintiff's gait was "stooped, slow, mildly antalgic, requiring a

6  walking stick, and she almost lost balance while [he] watched her walk down the hallway."  (*Id.* at 40)

7  In addition, Plaintiff was "unable to stand on her toes or on her heels."  (*Id.*)  Dr. Fabella found

8  Plaintiff's right eye was "nonreactive to light" while her left eye was "reactive to light."  (*Id.*)  Plaintiff

9  had decreased range of motion in her back with forward flexion, neck with both lateral rotation and

10  lateral flexion, and right knee with flexion.  (*Id.* at 40-41)  Dr. Fabella noted Plaintiff's straight leg raise

11  test caused low back pain.  (*Id.* at 41)  Further, Dr. Fabella found Plaintiff's range of motion was

12  normal in her wrists with negative Tinel's signs, but "positive Phalen's signs bilaterally."  (*Id.*)  Dr.

13  Fabella determined Plaintiff had "[n]ormal muscle bulk and tone without atrophy;" her motor strength

14  was 5/5; and her sensation was intact to light touch.  (*Id.*)  In her extremities, Plaintiff's pulses were

15  "2+ and symmetrical throughout," without clubbing, cyanosis or pedal edema; there were "no joint

16  deformities, effusions, warmth, swelling, crepitus or pain on motion;" and she had "no laxity of any

17  joint."  (*Id.*)

18          Dr. Fabella opined Plaintiff was "severely visually impaired bilaterally."  (Doc. 10-11 at 42)  He

19  again opined Plaintiff was "able to lift and carry less than 10 pounds occasionally and frequently

20  secondary to carpal tunnel symptomology bilaterally."  (*Id.*)  In addition, he believed Plaintiff was "able

21  to walk and stand for two hours or less out of an eight-hour day secondary to blindness, generalized

22  pains, low back and right pain."  (*Id.*)  According to Dr. Fabella, Plaintiff would "continue to benefit

23  from the use of a walking stick because of blindness, knee and back pains;" and was "unable to walk on

24  uneven terrain, climb ladders, or work at heights secondary to blindness."  (*Id.*)  Further, Dr. Fabella

25  opined Plaintiff had postural limitations and was "unable to climb, balance, kneel, or crawl secondary to

26  blindness, low back pain, neck pain and knee pain."  (*Id.*)  He determined Plaintiff had "impairment in

27  both gross and fine fingering manipulation secondary to carpal tunnel symptomology."  (*Id.*)  Finally,

28  Dr. Fabella believed Plaintiff should avoid heat "due to flareups of her sickle cell disease."  (*Id.*)

a.      The ALJs evaluation of the opinions

The ALJ summarized the findings of Dr. Fabella and indicated they were given "little weight." (Doc. 10-3 at 35)  The ALJ opined the limitations related to lifting and carrying, standing and walking "for two hours or less," need for a walking assistive device, inability to walk on uneven terrain, and postural limitations were "inconsistent with the medical evidence."  (*Id.* at 34)  The ALJ noted:

> For example, x-rays of the right shoulder revealed minimal early degenerative changes, but no evidence of fracture, dislocation, or areas or osseous destruction involving right shoulder, or calcific tendinitis (Ex. 23F/16).  In addition, x-rays of cervical spine demonstrated some degenerative changes with osteophyte formation anteriorly with disc space narrowing, but not fractures or subluxations and the spinous process appeared normal (id. at 17).
>
> Moreover, following complaints of bilateral wrist, hand, and shoulder pain, a motor and sensory nerve conduction studies of his bilateral upper extremities were normal (Ex. 13F/2).  Said studies showed no evidence of compression neuropathy (Carpal Tunnel Syndrome), polyneuropathy or ongoing cervical radiculopathy (id.).  In addition, x-rays of the left and right knee demonstrated no fractures, dislocations, or acute osseous abnormalities, no joint space narrowing or significant degenerative changes are seen, no evidence of a knee joint effusion; however, osteopenia was noted "benign sclerotic foci lateral femoral condyle" (Ex. 30F/1-3).
>
> Dr. Fabella found peripheral pulses 4/4 and symmetrical throughout, there was no clubbing, cyanosis or pedal edema, there were no joint deformities, warmth, swelling, crepitus or pain on motion; and no laxity of joint (Ex. 21F/7).  During her second examination, Dr. Fabella found peripheral pulses 2+ and symmetrical throughout, there was no clubbing, cyanosis or pedal edema, there were no joint deformities, warmth, swelling, crepitus or pain on motion; and no laxity of any joint (Ex. 24F/7). Her range of motion of the wrists was grossly within normal limits bilaterally; negative Tinel's signs, but she had positive Phalen's signs bilaterally (id. at 6).  She exhibited a normal muscle balk and tone without atrophy, her strength was 5/5 throughout without focal motor deficits, and she had good hand coordination (id.).  Thus, I gave the opinions of Dr. Post and Dr. Nasrabadi great weight and the opinion of Dr. Fabella little weight, as defined herein.

(Doc. 10-3 at 35)

Plaintiff contends the ALJ failed to identify "specific, legitimate reasons supported by substantial evidence" for rejecting the limitations identified by Dr. Fabella.  (Doc. 20 at 13)  She argues that "the ALJ selectively referred to several pages of imaging findings" to reject the limitations identified.  (*Id.* at 14)  According to Plaintiff, "the handful of pages cited by the ALJ are not sufficient to support the rejection of the examining opinions, which are consistent with the examination findings and treatment records as a whole."  (*Id.* at 15)  The Commissioner asserts substantial evidence supports the ALJ's evaluation of the medical opinion.  (Doc. 24 at 21-23)

15

b.      *Inconsistency with the medical evidence*

An ALJ may reject the opinions of a physician when the opinions are inconsistent with the overall record.  *Morgan*, 169 F.3d at 602-03; *see also Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (an ALJ may reject an opinion when it is "unsupported by the record as a whole"). However, to reject an opinion as inconsistent with the overall record, the "ALJ must do more than offer his conclusions."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  To reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The ALJ noted x-rays of Plaintiff's right shoulder showed "minimal early degenerative changes, but no evidence of facture, dislocation, or areas of osseous destruction."  (Doc. 10-3 at 35)  In addition, the ALJ noted imagining of Plaintiff's spine showed "some degenerative changes" and there was no evidence of "fractures, dislocations, or acute osseous abnormalities, no joint space narrowing or significant degenerative changes" in the knees.  (*Id.*)  However, the ALJ fails to explain how these findings are relevant to the limitations identified by Dr. Fabella, who imposed the lifting and carrying restrictions due to Plaintiff's blindness and unsteady gait.  (*See* Doc. 10-11 at 9, 42)  In addition, the ALJ did not explain how these findings were inconsistent with the postural environmental limitations identified by Dr. Fabella—including an inability to work at heights, walk on uneven terrain, climb, balance, kneel, or crawl—which Dr. Fabella indicated were, at least in part, imposed due to Plaintiff's blindness.  (*See id.* at 42) (indicating Plaintiff was "unable to walk on uneven terrain, climb ladders, or work at heights secondary to blindness" and "unable to climb, balance, kneel, or crawl *secondary to blindness*, low back pain, neck pain and knee pain") [emphasis added])  Because the ALJ failed to identify and discuss evidence conflicting with the limitations that were imposed due to an inability to see, the ALJ erred in rejecting these limitations as inconsistent with the overall medical record.

c.      *Inconsistency with Dr. Fabella's own findings*

Internal inconsistencies within a report support the decision to discount the opinion of a

16

physician. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Khounesavatdy v. Astrue,* 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) (an ALJ may consider "the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion").

As noted above, the ALJ summarized the findings of Dr. Fabella related to Plaintiff's peripheral pulses and noted Plaintiff had "no joint deformities, warmth, swelling, crepitus or pain on motion; and no laxity of joint." (Doc. 10-3 at 35)  The ALJ also noted Plaintiff's motor strength was 5/5, her range of motion in her wrists was grossly normal, and "she had good hand coordination." (*Id.*)  However, the ALJ has not explained what conflict exists between these findings and the limitations imposed.  For example, to the extent the ALJ believed the evidence related to Plaintiff's motor strength and lack of joint deformity or laxity conflicted with the lifting and carrying restrictions, the limitations were not imposed due to Plaintiff's strength testing.  (*See* Doc. 10-3 at 35; Doc. 10-11 at 9, 42)  Indeed, courts have determined an ALJ erred in rejecting lifting and carrying restrictions on the basis of strength testing, because "having normal motor strength in one's arms and legs does not necessarily indicate the ability to lift." *See Holmes v. Colvin*, 2016 WL 6943775 at *3 (W.D. Wash. Nov. 28, 2016); *see also Velasquez v. Astrue*, 2008 WL 791950 at *3, n.3 (D. Colo. Mar. 20, 2008) (noting motor strength was not muscle strength, and "it is not apparent in what way the facility for 'motor strength'… correlates with lifting and manipulative capacity, if it does at all").

The Court is unable to speculate as to what specific conflicts the ALJ found between the objective findings of the examination and the limitations identified by Dr. Fabella, such as those related to Plaintiff's ability to lift, carry, walk on uneven terrain, and perform postural activities.  Thus, this factor does not support the ALJ's decision to give little weight to the opinion of Dr. Fabella.

### 3. Conclusion

The ALJ failed to carry the burden to identify specific and legitimate reasons, supported by the record, to reject the functional limitations identified by Drs. Izzi and Fabella.  Consequently, the ALJ erred in evaluating the medical record and rejecting the mental and physical limitations identified by the examining physicians.

## C. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to

order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating Plaintiff's work history and failed to identify substantial evidence in the record that Plaintiff engaged in substantial gainful activity at step four of the sequential evaluation. In addition, ALJ failed to identify legally sufficient reasons for rejecting the mental limitations identified by Dr. Izzi, which impacted the analysis at step two regarding the severity of Plaintiff's mental impairments. Finally, the ALJ failed to specifically address the objective evidence conflicting with the limitations identified by Dr. Fabella in formulating Plaintiff's physical residual functional capacity. Because the ALJ failed to reject the opinions of Dr. Izzi and Fabella on proper grounds and there is conflicting evidence in the record—including the opinions of non-examining physicians—the error is not "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record related to Plaintiff's physical impairments, and the administrative decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1.   Plaintiff's appeal of the administrative decision denying benefits (Doc. 20) is

**GRANTED**;

2.    The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.    The Clerk of Court is **DIRECTED** to enter judgment in favor of Sonja Mayo, and against Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **March 8, 2021**                    **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE